IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | NO. 15cr050-01 (GK) |
| Plaintiff, | § § | |
| v. | § § | |
| JOHNNY GUTIERREZ, | § § | FILED |
| Defendant. | § § | APR 2 2 2015 |

STATEMENT OF THE OFFENSE

Clerk, U.S. District and
Bankruptcy Courts

The Department of Justice, Criminal Division, Fraud Section (the Government), and the Defendant represent and agree that if this matter were to proceed to trial the Government would be able to prove the following beyond a reasonable doubt:

1. The Export Import Bank (Ex-Im Bank), located in Washington, D.C., is an executive branch agency of the United States and is responsible for promoting the export of United States goods to foreign companies. Ex-Im Bank issues loan guarantees and insurance to domestic banks and lenders for loans provided to foreign buyers purchasing goods manufactured in the United States.

2. Up until April 28, 2014, **JOHNNY GUTIERREZ ("GUTIERREZ")** was employed by the Ex-Im Bank as a loan officer and was a federal employee.

3. CC#1 is a naturalized U.S. citizen living in Miami, FL, and the owner of IA Inc. ("IA"), a domestic Florida corporation that exports construction equipment and materials.

4. CC#2 is a citizen of the Dominican Republic (DR) and worked as a financing broker. CC#2 independently arranged for purchase transactions in the DR that were financed with loans insured or guaranteed by the Ex-Im Bank.

1

5. **GUTIERREZ**, as an Ex-Im Bank loan officer, was responsible for conducting credit underwriting reviews for companies and lenders submitting financing applications for insurance or guarantees with the Ex-Im Bank. **GUTIERREZ** reviewed the proposed purchaser's credit reports and financial statements and thereafter, prepared a Credit Memorandum recommending approval or disapproval of credit financing for a proposed purchase transaction.

6. During the period 2001 through 2013, **GUTIERREZ'** Ex-Im Bank responsibilities included reviewing applications for insurance and guarantee policies submitted by CC#1 and CC#2.

7. Since 2001, IA (CC#1) was an exporter or supplier on at least 36 insured or guaranteed Ex-Im Bank transactions of which ten (10) have defaulted causing Ex-Im Bank an indemnification loss of at least $19,914,676.29.

8. **GUTIERREZ'** responsibilities at the Ex-Im Bank did not include performing due diligence on proposed transaction exporters and suppliers.

9. During the period 2006 through November of 2012, **GUTIERREZ** received not less than $22,000 from CC#1 in return for **GUTIERREZ'** overlooking IA's recent defaults in his credit memorandum recommending approval of new IA (CC#1) Ex-Im Bank guaranteed transactions. **GUTIERREZ** received CC#1's payments through the receipt of four (4) checks and two (2) wire transfers into **GUTIERREZ'** personal bank account.

10. CC#2 would inform **GUTIERREZ** of CC#2's pending loan applications at the Ex-Im Bank which **GUTIERREZ** expedited by giving CC#2's applications priority

review over other applications that had been pending for longer periods of time.

11.     CC#2 would send proposed Ex-Im Bank financing applications to **GUTIERREZ'** home or private email account for **GUTIERREZ** to critique including identifying possible deficiencies. CC#2 would thereafter submit revised financing applications to the Ex-Im Bank for approval.

12.     Through a verbal agreement with CC#2, **GUTIERREZ** would receive one half of CC#2's net profit on a brokered transaction after Ex-Im Bank approved the financing.

13.     **GUTIERREZ** provided CC#2 confidential information including leads about potential transactions in the DR that were considering Ex-Im Bank financing for CC#2's solicitation as clients.

14.     During the period from December of 2008 through December of 2013, **GUTIERREZ** received not less than $56,900 from CC#2 in return for the services identified in paragraphs 11, 12 and 13. CC#2's payments were received through 13 wire transfers to **GUTIERREZ'** personal bank account.

15.     **GUTIERREZ** failed to inform anyone at the Ex-Im Bank of the payments he received from CC#1 and CC#2 because he knew as an Ex-Im Bank employee he was prohibited from receiving such payments and that the payments were illegal.

Date: 4/22/15

 JOHNNY GUTIERREZ
 Defendant

Date: 4/22/15

 SOLOMON L. WISENGERG, ESQ.
 Attorney for the Defendant

Date: 4/20/15

 WILLIAM H. BOWNE
 Trial Attorney
 PATRICK M. DONLEY
 Senior Ligation Counsel
 Fraud Section, Criminal Division
 United States Department of Justice